IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRAXYS NORTH AMERICA LLC : CIVIL ACTION
:
v. :
:
EVRAZ CLAYMONT STEEL, INC., :
et al. : NO. 09-684

MEMORANDUM

Bartle, C.J.                                                April 4, 2011

Plaintiff Traxys North America LLC ("Traxys") brings this diversity action for breach of contract against defendants Evraz Incorporated, NA ("Evraz") and Evraz Claymont Steel, Incorporated ("Claymont"). Before the court is the motion of defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most

favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

## II.

It is undisputed that Traxys is a supplier of raw materials, including silicon manganese ("SiMn"), an ore used in the manufacture of steel. Evraz manufactures steel which is then sold to builders of highways, bridges, vessels, and for other uses. Claymont, which is a wholly-owned subsidiary of Evraz, operates a steel manufacturing facility located in Delaware.

The facts surrounding the transaction at issue are highly disputed. According to evidence on which Traxys relies, Jeffrey Blauvelt, a purchasing agent for Claymont, orally requested from Traxys a quote for 1,400 tons of SiMn in July 2008. Traxys responded by email to Blauvelt with a bid to deliver the requested SiMn between November 2008 and January 2009 for $1.18 a pound, which would result in a total contract price of $3,304,000. Blauvelt orally communicated his acceptance. He purportedly sent a confirmation memorandum by facsimile and then mailed a copy of the confirmation on or about July 28, 2008. As evidence of this transaction, Traxys has presented a written purchase agreement for SiMn signed by Traxys (but not defendants) and a time-stamped facsimile log indicating transmission of the agreement to Claymont. Traxys asserts that these dealings were representative of the parties' ordinary course of dealing throughout their business relationship, which began in 2003.

In January 2009, Claymont laid off Blauvelt and other workers due to the worsening economy. By this time, the market for SiMn had collapsed, with prices falling to approximately 45 cents per pound. A representative of Traxys thereafter met with Donald Silinski ("Silinski"), the person who succeeded Blauvelt as Claymont's purchasing agent. Traxys' representative allegedly reminded Silinski of the July 2008 contract during this meeting. The next month, Silinski requested delivery from Traxys of 320 tons of SiMn at the alleged contract price of $1.18 a pound, which was substantially higher than the then current market price. Silinski later refused to purchase the remaining 1,080 tons of SiMn from Traxys and denied the existence of any contract.

Traxys subsequently filed a complaint in this court for breach of contract, seeking $1,614,240 in damages. This sum represents the difference between the contract price for the remaining 1,062 tons of SiMn and the market price at the time of the alleged breach.

Defendants' version of the events differs dramatically. According to defendants, Silinski, the new purchasing agent, bought 320 tons of SiMn from Traxys at $1.18 per pound in February 2009 because he was unfamiliar with the SiMn market and wanted to ensure that defendants could continue their manufacturing operations without interruption. Defendants further assert that they have no record of the alleged July 2008 transaction in their procurement software system. They also have

no record of receiving any written confirmation of the alleged purchase, whether by facsimile, email, or through letter correspondence. Although approval from a supervisor would be required for a purchase of SiMn over $2,000,000, Blauvelt allegedly never discussed the transaction with any other employee of defendants. Instead, his supervisors claim to have been unaware of the transaction. Defendant Evraz also maintains that it was in no way involved in the transaction and cannot be held liable for the acts of its subsidiary, Claymont.

Defendants also maintain that Traxys has presented false evidence in support of its claim. Defendants point out that in January 2009 Traxys persuaded Blauvelt, at the time a former employee of Claymont, to sign a form acknowledging the July 2008 purchase agreement. Traxys purportedly falsely claimed that the form was signed in July 2008, the time that the alleged agreement was reached and before Blauvelt was terminated, to gain an advantage in the litigation. In response, Traxys states that it never intended to present this evidence under false pretenses. Instead, it argues that it had Blauvelt sign the form out of a genuine fear that defendants would attempt to avoid their contractual obligations. Traxys has admitted that Blauvelt signed the form after his termination. During his deposition, Blauvelt declared that he signed the form after the fact because he "didn't get around to it" before, but the purchase "was already approved."

III.

Defendants argue that they are entitled to summary judgment based on the statute of frauds in the Delaware Uniform Commercial Code ("U.C.C."). Under the statute of frauds, a contract for the sale of goods for $500 or more is not enforceable by either party unless evidenced by writing. Del. Code Ann. tit. 6, § 2-201(1).

Traxys counters that the statute of frauds is inapplicable because of the "merchant's exception." This exception provides that an oral agreement is enforceable:

> [b]etween merchants if within a reasonable time a writing in confirmation of the contract ... is received and the party receiving it has reason to know its contents ... unless written notice of objection to its contents is given within ten days after it is received.

Id. at § 2-201(2). A merchant is defined as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Id. at § 2-104(1).

Defendants respond that they are not merchants because they are not in the business of selling SiMn and have never held themselves out to the public as having specific expertise in the purchase of SiMn. We are not persuaded. The Official Comments to the Delaware U.C.C. provisions dealing with the statute of frauds and confirmatory memoranda state that:

> [f]or purposes of these sections *almost every person in business* would, therefore, be deemed to be a "merchant" under the language

-5-

> "who ... by his occupation holds himself out as having knowledge or skill peculiar to the practices ... involved in the transaction ..." since the practices involved in the transaction are non-specialized business practices such as answering mail.

Id. at § 2-104 cmt. 2 (emphasis added). The definition of merchant for purposes of this provision focuses not on the specific goods sold but rather on the type of business practices at hand. Id. These Official Comments are considered highly persuasive authority. See, e.g., Acierno v. Worthy Bros. Pipeline Corp., 656 A.2d 1085, 1090-91 (Del. 1995).

Our Court of Appeals has rejected the narrow definition of merchant that defendants currently advance. In Jame Fine Chemicals Co. v. Hi-Tech Pharmacal Co., a manufacturer of cough syrup brought an action for breach of contract against a supplier of a raw ingredient. 44 Fed. App'x 602, 603 (3d Cir. 2002). The United States District Court for the District of New Jersey dismissed the claim on the grounds that the manufacturer's allegations of an oral contract were barred by the statute of frauds. Id. at 604. The Court of Appeals reversed. It treated the parties as merchants and declared that "written confirmation of a prior oral agreement" was sufficient to state a claim under the U.C.C. Id. In addition, this court has treated as merchants a supplier of plywood and a contracting company who purchased the plywood to construct buildings. Leonard Pevar Co. v. Evans Products Co., 524 F. Supp. 546, 548-49 (D. Del. 1981).

The Court of Appeals for the Second Circuit has also broadly defined the term merchant under similar circumstances. In American Plastic Equipment, Inc. v. CBS, Inc., a purchaser of plastic molds brought an action against CBS for breach of contract in which it alleged that the parties had entered into an oral agreement followed by written confirmation. 886 F.2d 521, 523-25 (2d Cir. 1989). CBS raised a statute of frauds defense. Id. at 527. The Court of Appeals found that genuine issues of material fact existed as to whether CBS was a merchant precluded summary judgment. Id. at 527-28. In doing so, it relied on the same version of the U.C.C. Official Commentary adopted by Delaware. Id. at 528. The court declared that "no jury would have any difficulty concluding that CBS ... held itself out as having sufficient familiarity with the postal system and the answering of mail to be considered a merchant." Id. at 528 (citing U.C.C. § 2-201(2)).

Contrary to defendants' assertions, the term merchant includes not only a party which resells the particular goods or products it is purchasing but also one which is an end user, such as a party which uses the goods or products in a manufacturing process. As stated in the U.C.C. Commentary, merchant includes anyone who "by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Del. Code Ann. tit. 6, § 2-104(1). It matters not what the purchaser intends to do with the goods.

Here, defendants manufacture and sell steel throughout the nation. As members of the business world, they are sufficiently familiar with "non-specialized business practices such as answering mail." See id. at § 2-104 cmt. 2. There is simply no requirement that they be engaged in the sale of SiMn, the precise goods in question, in order to be deemed a merchant under the U.C.C.[1] See id.

In opposition to the motion for summary judgment, Traxys has presented a purchase agreement for SiMn it had signed and a time-stamped facsimile log indicating transmission to Claymont. This evidence purportedly demonstrates that defendants received written confirmation of an oral agreement and did not timely object.[2] Because Traxys has presented genuine issues of material fact with regard to whether defendants are merchants and whether a written confirmation followed an oral agreement, we will deny the defendants' motion for summary judgment based on the statute of frauds.

---

1. Defendants cite several cases to the contrary, none of which arises out of this district or circuit. See, e.g., Forms World of Ill., Inc. v. Magna Bank, N.A., 779 N.E.2d 917, 921-22 (Ill. App. Ct. 2002); Louis Price Paper Co., Inc. v. Fed'n Emp't & Guidance Serv., Inc., No. 1024520, 1994 WL 116649 (N.Y. Sup. Ct. Feb. 28, 1994). They have been criticized and are not persuasive. See 2 Anderson on the Uniform Commercial Code § 2-104:21 (3d ed. 2010).

2. This agreement is signed by a representative of Traxys, but not by defendants. Because this evidence alone is sufficient to defeat summary judgment, we need not address the parties' contentions surrounding the purchase agreement signed by Blauvelt in 2009.

Evraz also argues that it is entitled to summary judgment because it is an entity distinct from Claymont and was in no way involved in any agreement to purchase the SiMn which is the subject of this lawsuit.  Generally, a parent company is a separate legal entity and will not be held liable for the acts of its subsidiary.  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (citing United States v. Bestfoods, 524 U.S. 51, 69 (1998); Am. Bell Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 887 (3d Cir. 1984)).  A court may only hold a parent liable for the acts of its subsidiary if:  (1) the subsidiary acted as an agent of the parent or (2) there is some basis for piercing the corporate veil.  See Phoenix Canada Oil Co. Ltd v. Texaco, Inc., 842 F.2d 1466, 1476-78 (3d Cir. 1988).

These are two different theories of liability.  Id. Under the agency theory, "total domination or general alter ego criteria need not be proven." Id. at 1477.  Instead, the proponent must demonstrate an agreement between the two entities "so that one acts on behalf of the other and within usual agency principles" and the arrangement is related to the cause of action.  Id.

Traxys concedes that Evraz cannot be held liable for the actions of Claymont by piercing the corporate veil.  However, Traxys asserts that Evraz paid for the February 2009 shipment of the 320 tons of SiMn to Claymont.  Evraz allegedly also included the price of SiMn from Traxys in its 2009 budget.  Furthermore, certain Claymont employees who were allegedly involved in the

transaction identified their corporate affiliation as "Evraz Claymont Steel A Division of Evraz Inc. NA" and used email addresses with "Evraz, Inc. NA" in the domain name.  This evidence raises a genuine issue of material fact regarding whether Claymont acted as an agent of Evraz in the purchase of SiMn.

Accordingly, we will deny the motion of both defendants Claymont and Evraz for summary judgment.